The next matter, number 24-1660, Federated Mutual Insurance Company v. Peterson's Oil Service, Incorporated et al. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning, Your Honors. Please declare Chuck Spivak on behalf of the appellant, Federated Mutual Insurance Company. I have with me at counsel table my co-counsel, Eric Hermanson. Your Honors, may I reserve three minutes for my rebuttal? You may. Thank you, Your Honor. Your Honor, this appeal differs from that which the Court heard yesterday, in that Federated's coverage incepted three years after the coverage provided by U.S. Fire expired. Federated's coverage started on July 5 of 2019, nearly four months after Peterson Oil was served with this class action complaint, which took place on March 18 of 2019, which is the same day that Peterson also received the claimant's Chapter 93A letter. Federated's policy expressly states that it only covers property damage so long as, prior to the policy's inception, no insurer knew that property damage had occurred in whole or in part. And it goes on to leave no doubt as to what constitutes that knowledge, because the policy says that property damage will be- But it focuses on what is property damage. That's the, right, what property damage are we talking about? And so each boiler that is infected with that oil is a new boiler that's broken. So under the plain language of that, I don't understand how some boiler that's not yet broken can be property damage. I understand they know they're doing something bad that may break boilers and they're on notice of that, but they don't know about that boiler. And that's the position of the District Court that at least seems to jive to me with the plain language of that. Your Honor, actually, given the femur language of the policy, they absolutely did know that if they continue to deliver fuel after the inception of Federated's policy, they were already facing a claim for property damage to those boilers that happen in the future. Because this is not a suit that's a conglomeration of a bunch of individual claims, each seeking their own separate damages. It's an action on behalf of a class which specifically is defined as consisting not just of those people who have already received blended oil from the time of the statute of limitations up to the time of commencement of the suit, but also asserts a claim for property damage on behalf of all those who continue to receive blended fuel, even after the service of the complaint. And in this case, the actual knowledge of the insured is set forth contractually in the policy itself. Because the policy itself says that property damage will be deemed to have been known to have occurred when any insured receives a written or verbal demand or claim for damages because of the property damage. And the Federated policy expressly accounts for property damage that Peterson Oil knew of prior to the policy period, continuing into the policy period and beyond. But if the property damage means physical injury to tangible property, that's the definition. Yep. And there's a class action that says anybody whose boiler is injured from now until the end of time is part of this class. Yep. But at the moment, these futures, some boilers are going to break from this oil, some might not. They haven't yet broken. So how can you say that there's been physical injury to tangible property that's in the future? The question, Your Honor, is not whether there actually has been physical injury in the future, but whether Peterson has put on notice that there is a claim for future property damage. And it has been put on notice because the written demand, the lawsuit which was served upon it, specifically says that we are making claim for property damage that has not occurred yet. We are making claim for property damage on behalf of all people who are subject to the same allegedly negligent, fraudulent, et cetera, conduct by Peterson that occurred in the past if it incurs in the future. And the policy language accounts for this because it talks about the idea that any continuation, change, or resumption of such past property damage during or after the policy period will be deemed to have been known prior to the policy period. So I would ask, Judge Aframe, in response to your question, the puzzled look that you have, is that how is it then, can this be a complaint that somehow alleges property damage is occurring during the policy period, which is necessary to invoke an insurance company's duty to defend? Okay, and Judge Casper recognized that we have no duty to defend and no duty to respond to claims that allege property damage before our policy period. But remember, our policy period incepted four months after this suit was started. Yet somehow, because of the manner in which this class action was pled, asserting damage not yet happening occurring during federated policy period on the basis of the way the class is pled, how can it trigger a duty to defend for damage that hasn't occurred yet, while at the same time not implicating the other policy insuring agreement requirement that the insured not know that it's facing a claim for property damage in the future? And in this case, Your Honor, it is absolutely clear. This class action tells Peterson Oil, months before the federated policy incepts, that if Peterson Oil continues to engage in the same conduct, alleging the complaint that led to any past damage into the future, it is already facing a claim for that future damage. Why is your argument in this case not, this goes back to yesterday's case, that this isn't an occurrence, there's no accident? I mean, yesterday we were arguing about, well, up until that point, they wouldn't have known because the news report hadn't happened. But in your situation, you insure them after they do know that this oil harms boilers, and so it seemed harder in this case to say it's an accident. But that's not your argument. Why is that not? Your Honor, mainly because this no loss provision is a much more direct route toward a determination that there's no duty to defend and thus no duty to indemnify. Because unlike the occurrence argument, which turns on the knowledge of the insured, the occurrence argument, the definition of occurrence is an accident, including continuous or repeated exposure to the same general conditions, neither expected nor intended from the standpoint of the insured. And yesterday's argument was that by 2017, any damage was going to be expected. In this case, rather than talk about whether Peterson actually expected damage or not, we're relying on policy language that deems that it knew that it was going to happen. And so this is a much cleaner, matter-of-law, direct way of getting to no coverage. Because contractually, what Peterson says, we thought, we understood, didn't understand, is really irrelevant. The policy language turns on the fact that Peterson received a summons of complaint that told it it was going to be held liable for any property damage that occurred during Federated's policy period. And it knew that before the Federated policy incepted. So when Peterson was served with this class action complaint, and when it received the 93A letter on behalf of the class, both of which occurred prior to Federated's coverage, it knew prior to Federated's coverage, because it was contractually deemed to have this knowledge, that even if it continued to sell blended fuel during Federated's policy period, that it was already, not that it would, that it was already facing a claim for that property damage arising out of those future sales. And for that reason, there is no coverage. Can we move backwards to the district court's orders, and whether it should be interpreted as an injunction or not? I can definitely deal with that, Your Honor. And frankly, Your Honor, I think that this court has already dealt with that issue as to whether In your remarks, can you touch on this too, which is, do you interpret that order that you participate or contribute to Peterson's defense, do you interpret the order as demanding that, and then are you contributing to the defense? So we recognize it as containing compulsion to us that we have to contribute to Peterson's defense. Now, Peterson's only entitled to one defense. Just because there's more than one insurance company doesn't mean it gets the same cost of defense multiple times. And as we know from yesterday's argument, U.S. Fire is providing that defense. So Federated is engaged in discussions with the insurers who are providing the defense as to how to share that defense. But in terms of dealing with Peterson directly, it's not like Federated is going to give it a second defense. The issue is, how do we participate in the defense that's already being provided? Do you read what Judge Kapp, because I understand the procedural posture. This summary judgment thing is resolved not the way you want. Then there's discussions between you and them, it appears, about, like, well, what happens next? And then you file a motion to clarify what are our, like, rights and duties here. And then Judge Kasper ends up granting, I think in response to that, it seems like to me, summary judgment for that. And what I, I guess my question, which I think is also Judge Montecarlo's question, is does that procedural play out, is that fairly viewed as akin to an order for you to participate? Now, what that means and how that works and whether it's pro rata share, I don't know. But do you believe you are under an order to participate in their defense? Yeah, there's a compulsory order saying that we have a duty to defend and that we need to participate in their defense. Do you think that order is enforceable by the contempt power, which is one way we decide whether, you know, might indicate whether this is an injunction? It potentially could be, Your Honor. But at this point, we're talking about a monetary issue. And that's no longer Peterson's claim to make. It's already getting a defense. It can't come to us and say we want you to pay additional defense on top of the full defense we're already getting. But what would happen? Let's say United Fireworks, yesterday's insurance company, goes to them and says, hey, we're not getting any cooperation from Federated. They're not doing anything. They're not even engaging in discussions with us. They've just told us we don't have to do anything. Do you think theoretically or possibly that the Peterson people could get before Judge Casper and say, enforce your order, tell them to participate in good faith with United Fire? So I can tell you, Your Honor, that the Peterson people have already gone on record in connection with the duty to defend, saying that if you have a duty to defend, you have a duty to defend the whole thing. And it's not up to us to pursue every insurance company and make sure they pay their fair share. We can target one of you and collect 100% of the defense from you. Now, your situation would be, what if U.S. Fire were to all of a sudden say we're going to pull the defense and now Peterson's left without a defense at all? Now this is no longer an issue between us and U.S. Fire. This is now an issue between us and Peterson. And then we're under an order compelling us to defend. Can you just – sorry, but your time is running short. Can you discuss this question of whether the district court's order is a final order? And is there more for the district court to do? Do they have to dispose of the counterclaim before it? What is your take on that opinion? There's not a single thing left for the district court to do. The counterclaim is no longer part of any pending action because Federated's complaint has been dismissed without prejudice. And there's no argument that there's further proceedings on the counterclaim. I do want to say this, even though I understand my time is over. This court has already told us in the W. Haldane v. AIG matter, which we cited in our brief, 748-377, the 2014 decision of this case, that a similar order requiring an insurance company, on summary judgment, to pay defense costs is of such a compulsory nature that it's akin to injunctive relief and it's immediately appealable under 28 U.S.C. 1292-A1. And there's no way to distinguish my situation from the situation of the insurer in that case. Thank you. Thank you, Your Honors. Thank you, Counsel. At this time, would Counsel for Peterson's Oil please introduce himself on the record to begin? Good morning, Your Honors. Lou Savara, representing Peterson Oil in Hotwood, Sharon, and Kristen Peterson. Like yesterday, I'll be splitting my time with Attorney Strong. Maybe I'll start with the end. Yes, please. First of all, in the underlying case that Judge Casper rendered her ruling on, there was no counterclaim by Peterson Oil. There was no request to compel them to pay. We don't have a declaratory judgment action. We didn't bring a motion to force them to do it. There was no order issued forcing Federated to pay defense costs. If there had been, following up on your question, I'd suggest that they have ignored it, whether or not they could have worked out a deal with U.S. Fire or not. If it's an order, it's clear, it's unambiguous, pay. They have not, haven't tried to, haven't approached us, haven't made any contribution, or frankly it's not in the record of whether or not U.S. Fire has paid all of the defense costs or not. The one thing that is undisputed. Why does that matter? Well, I mean, there's nothing in the record that suggests that they don't pay because U.S. Fire is paying, which is what I understand. I mean, you may be mad at them, but the question is, do people have power to go before Judge Casper or the ability to go before Judge Casper? Whether you choose to or not, it's up to you. I don't know, but that's the question. Well, first of all, my point was originally that if it's an order to pay, I would like to think that anybody would honor that, and they haven't. Well, that's why we have procedure. I understand. In my procedure, would I have to go back to Judge Casper and seek an order compelling them to pay? I've not done that. There's no order like that in front of her. But it's not automatic, and I don't believe, as I said yesterday, that I have an automatic right to seek contempt. That's my reading of her order. But why? I mean, she, I mean, this is the nub of it. They file clarify to tell us what we need to do, because apparently there's some dispute about what we need to do, and then she responds with giving you something. And why would she do that in response to that clarification? It seems to me to give you authority, some better basis to get what you say you want, which is the defense, which then seems to me you could enforce if they aren't doing it, whether you've chosen to or not. Again, I don't know why that matters. But that's how it played out, that you have this ability, potentially, or at least. I do. I do. But I don't think that's the same thing as saying that it's akin to an injunction for which I can seek contempt. She rendered a legal decision that they have a duty to defend. I can take that decision and now utilize it to seek some order of motion to compel, a preliminary injunction, but I don't have a right, I don't believe, to go in and seek contempt, which is what you would get if it was an injunction, my view. With respect to the final judgment, I don't believe that the underlying case, and I checked the docket, it has not been dismissed. The case is active. We continue to have duties. Right. I mean, we don't have a judgment. I agree with you. But why is it what's happened so far not a final judgment? There's multiple issues. The duty to identify, which won't be resolved, was essentially, as she's clarified, an indicative order stayed until the underlying case, which is not unusual. I'm running out of time. The second issue is whether or not there is, in fact, a declaratory judgment still alive, followed by Attorney Strong. His 176D case was ruled on, but not his D.J. action with respect to their duty to provide indemnity. And, frankly, they dealt with it. If I could just address the – You have five minutes, so you still have time. So there are two things live, in your opinion? Yes. Okay. In addition to the fact that, at some point, we may have to go back and revisit the issue of defense clause, depending, again, on the result of the underlying case. Now they have an ongoing duty, but, again, as we discussed yesterday, that could be revisited at some point, depending on what happens at trial. With respect to this issue about the known loss, I think the issue does come down to whether or not this language in this policy allows them to treat individuals who suffer damages post-policy as part of one continuous, uninterrupted occurrence and damage. And I don't think there's a case out there that even comes close to that. In this particular case, in the facts – I think all these cases that we look at, whether it's the common law, known loss doctrine, or the contractual codification, are very fact-specific. And they take a hard look at what makes sense in the context and what any individual insured is buying. This is a contract for insurance. And if you take a look at the entirety of the language they rely upon, really what it's talking about is where there's been a damage that occurred before the policy. And then you take a look at what happens after the policy. It's whether there's a continuation, change, or resurrection of that first damage. So, for example, if I was a homeowner and I bought policy in 2018 and I reported it and said, you know, my heater shut down, and it's because your fuel was no good, which we deny, but it's because your fuel was no good. If I then come back after, in 2019, after the policy issued, and come back and say, you know, my heater's still not working, or I lost heat again, that is a continuation, resurrection, change, arguably, of the damage that had already occurred. All these cases, whether it's Claritin, ARCH, the SDK case, all of them talk about really kind of one singular event, one causation, one action. And then damages that occurs that continue into the future. It makes sense. Of the same piece of property? Because it seems like... It's almost always the same piece of property. What they're saying is the class action says, basically, any boiler from now going forward that you put fuel into is going to break. Yeah. And that means that you are on notice that all of those other boilers are going to be breaking, and that's the property damage, and it's recurring in the sense that it's your conduct that you know about, and you're going to continue to do it, and you continue to break boilers. That might lead to a claim if we did some fraud in the application process or we failed to disclose some information. None of that, which is the issue here. The issue simply here is whether or not it's the same property or a continuation of it not. Say that last part again. It's the same property or... It's not the same property, and it's not a continuation of the same damage. But more so, there was a discussion earlier with my brother about whether or not the underlying case filed by my brother includes a claim for future damages. It does not. You can't sue somebody for something that might happen. In the class action, all it does is say these named plaintiffs, they proved they were damaged. If somebody else is damaged, actually damaged, not maybe damaged, not theoretically damaged, actually damaged because, as you asked, their boiler breaks down at some time in the future, they get the benefit of the named plaintiff. You don't have to try 500. But it's still a separate property damage. It's not the same thing. I think that's the end of that discussion, with all due respect. And if the Court has any further questions, otherwise we'd rest on our briefs. Okay. Thank you. Thank you. Thank you, Counsel. At this time, would Counsel for Marandino et al. please introduce himself on the record for his seven-minute response? Good morning, Your Honors. I'm Chris Jeffstrom for the claimants in the underlying class action, who are defendants in this case and appellees. So I think here we have to start with the language of the policy, and the language of the policy is clear, that what is not covered is damage that is known. Policy doesn't talk about claims that are known. It doesn't talk about theories of loss that are known. It doesn't even say damage accruing from the same types of harm that are known. It says damage that is known. You haven't heard a trace of that. So in other words, just so I understand that, 17 says property damage means physical injury to tangible property. And that's the phrase where damage comes from. And so your position is they have to have known before their policy about the particular damage to the particular boiler. And a class action that says hypothetically there will be other people, because these name plaintiffs, you agreed, and they all said that before, but the class action are future people. But there's no property damage there because those boilers are unidentified and unknown. They may exist. They may not in the future, but they certainly don't exist today. Do I get that right? Yeah, to a large extent, yes. But I do want to be clear. The fact that we have a class action just means that we have conglomerated a number of small claims, individuals' claims, for individual property damage. And so the fact that those claims might continue to come. That's filed on some date. And other people may get bad oil and their ears may break and they would join. But the day the policy went into place, they wouldn't know that some guy some months from now would get his boiler broken by the oil, right? Exactly. So the claims may continue. Those individuals may have claims that get added to our case, and they may have damage in the future that gets added to our case. But at the time the policy incepted, that damage didn't exist. They couldn't possibly have known about it because it didn't exist. And the policy is clear that you're talking about damage that had occurred. And I know they also rely on the DMR language, but it's the same thing. It's talking about damage that had occurred. So what does the recurring language do? What's an example where that applies? So I follow what we just said, but there's something about the damage reoccurring. And so when is that? What is that talking about? So I can give you a precise example from our case. One of the elements of property damage that we claim, and by the way, we didn't claim this until 2021, so they weren't on knowledge of this in 2019. But one of the things that we claim and our expert has opined on is that the oil, anything it touches, it corrodes, more so than ordinary number two oil. And so for people who were receiving the fuel prior to the policy period, their equipment had already started to corrode. And there's a number of customers in the class, including several of our clients, who received the oil before this policy and after. So it's the same physical damage that happened before happened after. So if my roof leaked and it flooded my kitchen and that happened before, that happened before. But if the roof is still leaking and it floods my kitchen again, that's the same damage. That's exactly right. And that's what Arch and Clarendon, the cases on which they rely, say exactly that. But that's still talking about the same kitchen. And the problem here is it's not the same boiler. Exactly. It's not only not the same boiler, it's not even the same house. And they haven't cited a single case anywhere in the country where knowledge of damage to one property can be imputed to the insured to have knowledge of damage to other properties. And that's what you would have to decide here. I also think we wouldn't be having this conversation if this weren't a class action. If the plaintiffs we added in 2021 had filed individual actions, if the thousands of customers harmed each filed individual actions, then the basis for their theory doesn't exist. And there's frankly no reason to treat it any differently just because it's a class action because we're still talking about individual claims for individual damages. And the Peterson defendants simply didn't know about those damages because they didn't exist. Do you think if they had raised the occurrence argument, I'm just thinking about yesterday still. Of course. Would they, I mean, they'd be in a different position, right, given what we talked about yesterday. I mean, the notice, all the things we talked about yesterday, oh, those things didn't exist in 2016. They did exist by the time they do the insurance contract in 2019. So it does seem like it's not an accident based on what we talked about yesterday. I think they have a better argument with regard to shutdowns. I'm not sure they still meet, based on the pleadings, the substantial certainty standard. But with regard to the corrosion damages, I don't think they have any argument. We didn't even know about the corrosion damages until 2021. And our initial complaint, not only did it not allege corrosion, it didn't allege long-term damage. So I guess I was talking more on the shutdown. Yeah, on the shutdowns, they have a better argument. But on the corrosion, I don't think there's any argument that Peterson knew, expected, intended. We didn't know.  So I don't, and that's also, with the way they've framed this argument, that would be a question of fact that hasn't been presented to the court. There's not facts to determine Peterson or what gets this complaint. Yeah, no, I'm just trying to figure out, like, why was this argument made versus that argument? I mean, I don't want to speak for them. But you helped me think about it. I think it's an intensely factual argument. I did have a couple other points I wanted to make quickly. One is, from a public policy perspective, and the common law known loss cases are different, but they do talk about the fact that you cannot have a known loss until there's been an adjudication or something very close to adjudication. Merely knowing that there has been a claim against you is not sufficient. Public policy explicitly goes away from that. I mean, you have agreed or they agreed to that. It does. But as a matter of public policy, if you were to conclude that knowing of damage to one person puts you on notice of damage of a similar type to another person, you are essentially eviscerating a significant component of the coverage from the point you learn of damage to one person. The damage that hasn't been adjudicated, damage that Peterson Oil denies, if you say, so take Sheena Marendino, one of our plaintiffs. If you say that because they knew she claims she was damaged, now anyone else who claims they have similar damage, that's a known loss, that would essentially eviscerate the product's liability coverage that Peterson Oil contracted for. And relatedly, there's been no allegation here that Peterson Oil didn't disclose this lawsuit, so there's every reason to believe that Federated underwrote this policy knowing this lawsuit existed, knowing that there was risk of continuing damage, and that raises one more point. Well, won't they tell me, no, we knew that wouldn't be, or at least they'll say, we thought that wouldn't be covered. I mean, it is a little weird, right, that there's a complaint filed that says, like, this, what you're doing is bad for boilers, and you get this insurance and that complaint's out there, and then you just keep doing the same thing, not you, that's bad for boilers, and then you just get to say, ah, cover me for that, even though I knew it, which is, I guess, why I still wonder why it would be an accident. But that's what's weird about it to me. And I guess because, you know, the evidence that we've seen at least is they knew by then that this was a problem, and yet they get to continue to get accidental coverage. That does seem weird. It happened in the asbestos cases, and in that case, what they said, these policyholders specifically underwrote it, and we don't know that they don't. I mean, we have to assume that they did because they haven't alleged that Peterson didn't disclose the case. And in that situation, that's the second circuit case. There's a case where they keep putting asbestos in the houses. They know asbestos is dangerous or whatever, and then each time they're putting it in, that's deemed to be a different property damage because it wasn't in the house until they put it in the house, even though it was bad. And so that damage didn't arise until they put it in the house. And you would say that's parallel here to the boilers. Exact same thing here. The damage didn't arise until they put the oil in the house. But the point I wanted to make here is that if you were inclined to think that this might be a known one, we really should get discovery as to what was known, both because there's a question of whether or not they underwrote this specific risk, but also Peterson claims that they told them about this risk and they said it was covered. And so if that's the case, there's an estoppel defense here. And so we don't think this is a – we think, frankly, this should be decided on the law, but to the extent not, we think we need discovery under 56D. Okay, thank you. Your time is up. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record? He has a three-minute rebuttal. May it please the court, Chuck Spivak again on behalf of the appellant, Federated Mutual Insurance Company. Your honors, the deemer language in the federated insurance policy tells us that whatever property damage is claimed in the complaint that was received by this policyholder prior to the inception of the federated policy will be deemed to be known by the insured prior to the inception of the federated policy. And this complaint, that which the insured is deemed to know contractually, tells us that it is an action not just on behalf of people who have already suffered property damage, but on behalf of anyone in the future who will suffer property damage. So the deemer language tells us that prior to the inception of the federated policy, by contract, this policyholder was aware that there were claims for property damage being made against it that had not yet occurred, but which would occur if this insured engaged in the same conduct it was engaging with regard to the prior claimants. And there's no question that that's what they're claiming with regard to the future claimants, because if they were claiming something completely different, then there would be no class for which these future claimants could belong to. They would be totally different claims. So, Your Honors, now the argument is, however, well, but no damage existed into the future, because it's in the future, right? Well, somehow they pled a complaint that says that we're already making a claim on behalf of individuals who suffer future damage. So if no damage existed prior to our policy period, then how can we have a duty to defend when the defense is triggered, is contingent upon there being property damage during the policy period? Because it's just a hypothetical. There might be people in the future who get oil, who have their boilers damaged. They don't exist now. They may exist. They may never exist. Exactly, Judge Aframe. Exactly. But if it's referring to property damage that has occurred, how can just the allegation of a class action in which these people may or may not exist constitute property damage that has occurred, when that damage won't have occurred until, if ever, their boilers were. Because the policy says that the insurer is deemed to know any property damage that is alleged against it in a written demand or claim for payment. And if it receives that written demand or claim for payment prior to the policy period, then it has prior knowledge of that claim for future property damage. And so getting hung up on whether the damage has actually occurred or not. But the language is receives a written or verbal demand because of the bodily injury or property damage, right? Right. And if I look at property damage, its definition is in the past tense. But they received a verbal demand for property damage that they claim that they can collect on the basis of people happy in the future. Thank you, Your Honor. Thank you. Thank you, counsel. That concludes argument in this case.